*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 21, 2023

Plaintiff-Appellee,

v

No. 360649
Eaton Circuit Court
LC No. 2020-020276-FC

BENJAMIN WILLIAM DUNN,

Defendant-Appellant.

Before: HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

Defendant appeals by right his jury trial convictions of operating a motor vehicle while intoxicated (OWI) causing death, MCL 257.625(4)(a), and reckless driving causing death, MCL 257.626(4).[1] The trial court sentenced defendant to serve concurrent prison terms of 99 months to 15 years. We affirm.

## I. BACKGROUND

The tragic facts of this case arise from an August 2020 incident in which Quentin Bartlett died after being struck and run over repeatedly by a car driven by defendant.

During the late night hours of August 7, 2020 and into the early morning hours of August 8, 2020, defendant, the victim, and many other patrons were present at a bar in Charlotte, Michigan. Defendant, who was under the influence of both alcohol and Tetrahydrocannabinol ("THC") from a marijuana-based drug, had verbal and physical altercations on the patio and inside the bar with various patrons, including the victim. Defendant left the bar, went to the parking lot, and got into his car. Several patrons, including the victim, followed him. As defendant was inside his vehicle

---

[1] Defendant was also charged with second-degree murder, and the jury found defendant guilty of the lesser included offense of involuntary manslaughter, MCL 750.321. However, the parties and trial court agreed that defendant would not be sentenced for this because of double-jeopardy concerns.

with the driver's side window down, defendant argued with the victim, who was next to the vehicle on the driver's side. Subsequently, defendant placed the vehicle in reverse, turned, and struck the victim with the vehicle, knocking him down. While the victim was still lying on the ground, defendant drove forward and over the victim. Defendant's vehicle became stuck on the victim's body, and he continuously drove back and forth over the victim. Eventually, defendant left his vehicle and attempted to flee. The victim was declared dead at the scene.

The jury found defendant guilty of operating a motor vehicle while intoxicated causing death and reckless driving causing death, but it acquitted him of a second-degree murder charge and instead found him guilty of the lesser included offense of involuntary manslaughter.

## II. ANALYSIS

## A. INSUFFICIENT EVIDENCE

Defendant argues that his is entitled to reversal because there was insufficient evidence for the charge of second-degree murder to be submitted to the jury, and the option to consider the charge of second-degree murder resulted in the jury reaching a "compromise verdict." We disagree with defendant's premise that there was insufficient evidence to instruct the jury on the charged offense of second-degree murder.

A claim of insufficient evidence is reviewed de novo. *People v Solmonson*, 261 Mich App 657, 661; 683 NW2d 761 (2004). We "view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, amended 441 Mich 1201 (1992). Evidence can be circumstantial or it may be drawn from reasonable inferences. *Solmonson*, 261 Mich App at 661. However, inferences may not be based only on speculation. *People v Lane*, 308 Mich App 38, 59; 862 NW2d 446 (2014).

"The elements of second-degree murder are: (1) a death, (2) the death was caused by an act of the defendant, (3) the defendant acted with malice, and (4) the defendant did not have lawful justification or excuse for causing the death." *People v McMullan*, 284 Mich App 149, 156; 771 NW2d 810 (2009), aff'd 488 Mich 922 (2010) (emphasis added). The only element that defendant appears to dispute is that of malice. "The intent to do an act in obvious disregard of life-endangering consequences is a malicious intent." *People v Goecke*, 457 Mich 442, 466; 579 NW2d 868 (1998). Accordingly, in the present case, there did not need to be evidence that defendant intended to kill the victim; rather, there needed to be evidence merely that defendant disregarded obviously life-threatening consequences of his actions. There was ample evidence to support this.

Defendant drove his car while under the influence of both alcohol and THC. Indeed, defendant described himself to a first responder as "high as fuck," and his blood alcohol content was later tested at 0.088, which is above the legal limit of 0.08. Expert testimony established that the combination of alcohol and the "cannabinoids" found in defendant's blood could result in an increased level of intoxication. Testimony established that several people were in the vicinity of

defendant's car, but eyewitness testimony and skid marks on the road suggest that he attempted to drive away very quickly despite the presence of pedestrians and his intoxication. Several witnesses testified that defendant initially hit and knocked over the victim while reversing; instead of checking on whatever he had struck, defendant continued his efforts to speed away. Moreover, there was evidence that the presence of the victim's body under the car caused him to get stuck, and his response was to drive his car back and forth despite pleas from bystanders to stop moving. One bystander testified that he attempted to check the victim's pulse but had to move out of the car's way when defendant drove forward and over the victim "at a high rate of speed." Multiple witnesses testified that defendant's vehicle essentially went forward and backward numerous times over the victim's body. Multiple witnesses testified that they pounded on the window and yelled at defendant to stop because he had run over the victim, and other witnesses testified that defendant appeared angry or aggravated. Finally, there was evidence that defendant attempted to flee the scene. Moreover, there was evidence suggesting that defendant might have consumed substances while in his car; for example, empty containers of THC edibles and other forms of synthetic cannabis were found in the car. This suggests a general disregard for life on the part of defendant.

For these reasons, while this jury did not, a rational jury could have viewed this evidence as proving beyond a reasonable doubt that defendant intended to act with "obvious disregard of life-endangering consequences," *Goecke*, 457 Mich at 466, and could therefore have found him guilty of second-degree murder. Thus, defendant's argument that the jury was allowed to consider a theory for which there was insufficient evidence is without merit, and we need not consider whether this led to an impermissible "compromise verdict."

## B. SENTENCING

Defendant argues that he is entitled to resentencing because the trial court erred by assessing 10 points for OV 1, one point for OV 2, and 10 points for PRV 5. We disagree.

A trial court's findings with respect to scoring of the guidelines are reviewed for clear error and must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

### 1. OV 1 AND OV 2

OV 1 "is aggravated use of a weapon." MCL 777.31(1). It is appropriate to assess 10 points for OV 1 if "[t]he victim was touched by any . . . type of weapon" other than a knife or cutting instrument; a firearm; or a harmful biological or chemical substance. MCL 777.31(1)(d). OV 2 "is lethal potential of the weapon possessed or used." MCL 777.32(1). It is appropriate to assess one point for OV 2 if "[t]he offender possessed or used any . . . potentially lethal weapon" other than an explosive, a firearm, a biological weapon, or stabbing or cutting device. MCL 777.32(1)(e). The term "weapon" is left undefined.

Defendant's sole argument is that a vehicle cannot be a weapon for the purposes of OV 1 and OV 2. However, this Court has defined "weapon" to mean "1. any instrument or device used for attack or defense in a fight or in combat. 2. anything used against an opponent, adversary, or

victim. 3. any part or organ serving for attack or defense, as claws, horns, teeth, or stings." *People v Ball*, 297 Mich App 121, 125; 823 NW2d 150 (2012) (quotation marks, citation, and alteration omitted); see also *People v Gary*, 305 Mich App 10, 13; 849 NW2d 414 (2014). The question of whether something is a weapon for the purposes of OVs 1 and 2 hinges on how the object is used. See *Ball*, 297 Mich App at 124-125; *Gary*, 305 Mich App at 13.

The definition from *Ball* is broad and includes a car when the car is used to strike or run over a victim. The definition is clearly not limited to traditional weapons, e.g., firearms or knives. See, e.g., *People v Lange*, 251 Mich App 247, 252-253; 650 NW2d 691 (2002) (holding that a "glass mug" could constitute a weapon for purposes of OV 1). Additionally, "the Legislature did not intend the term 'weapon' to contemplate only those objects that suggest planning or preparation by the offender." *Id*. at 255. Therefore, it is immaterial that a vehicle does not have the characteristics of a traditional weapon or that defendant may not have planned or prepared to use his vehicle as a weapon. What matters is whether defendant used the vehicle *against* the victim. See *Ball*, 297 Mich App at 124-125. As previously discussed, there was ample undisputed evidence that defendant struck and ran over the victim with his vehicle.

In conclusion, in this case, defendant's vehicle was used as a weapon, and the trial court did not err with respect to its scoring of OVs 1 and 2.

## 2. PRV 5

Ten points are assessed for PRV 5 when the defendant "has 3 or 4 prior misdemeanor convictions or prior misdemeanor juvenile adjudications[.]" MCL 777.55(1)(c). Defendant does not dispute that he had two prior adult misdemeanors. He challenges only a juvenile adjudication from 2013. His sole position is that he does not remember it being a formal adjudication and that remand is required for the record to be more clearly established. However, other than his memory, defendant presented no evidence to contest his prior juvenile matter being a formal adjudication. In contrast, the prosecution submitted the juvenile complaint, petition, and termination of jurisdiction from the Calhoun County Circuit Court, which suggested that a formal adjudication occurred. Moreover, although defendant's counsel provided his client's position, he conceded that the prosecution's evidence "seems to suggest otherwise," i.e., went against defendant's memory. The documentary evidence provided by the prosecution, especially in light of the lack of documentary rebuttal evidence and the acknowledgment by defendant's counsel, established by a preponderance of the evidence that defendant had a prior juvenile adjudication.

Therefore, defendant's sentencing guidelines challenges are without merit.

## III. CONCLUSION

Defendant's argument that he was convicted as the result of an impermissible "compromise verdict" is without merit because he has failed to establish his underlying premise that there was insufficient evidence of second-degree murder. Defendant's sentencing guidelines challenges are without merit because a car is a weapon for the purposes of OVs 1 and 2 when it is used against a victim and because the record supports the trial court's finding that defendant had a juvenile adjudication.

Affirmed.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado